1  BRIAN A. WILLIAMSON, ESQ. (CA BAR NO. 336547)
   **CALLAGY LAW, P.C.**
2  2550 Union Hills Dr., Ste 350-341
   Phoenix, AZ 85027
3  Telephone: (201)261-1700
   Facsimile: (201)549-8408
4  E-mail: bwilliamson@callagylaw.com
   Attorneys for Defendant/Counter-Claim Plaintiff
5  All American Healthcare Services, Inc.

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9  ALAMEDA HEALTHCARE &
   WELLNESS CENTER, LLC, a California
10 limited liability company; et al;

11              Plaintiff,                    Case No. 2:23-CV-00859-GW

12       v.                                   **DEFENDANT/COUNTER-CLAIM**
                                              **PLAINTIFF'S NOTICE OF**
13 ALL AMERICAN HEALTHCARE                    **MOTION FOR SUMMARY**
   SERVICES, INC, a New Jersey                **JUDGMENT**
14 Corporation; and DOES 1 through
   10, inclusive,                             Hearing Date: July 18, 2024
15                                            Time: 8:30 a.m.
                Defendants.                   Courtroom: 9D
16 _____

17 ALL AMERICAN HEALTHCARE
   SERVICES, INC, a New Jersey
18 Corporation

19       Counter-Claim Plaintiff,

20       v.

21 ALAMEDA HEALTHCARE &
   WELLNESS CENTER, LLC, a
22 California limited liability company; et al.

23       Counter-Claim Defendants.
   _____
24

25

26       **TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

27       **PLEASE TAKE NOTICE** that on July 18, 2024 at 8:30 a.m. in the United States

28

                                    1

District Court for the Central District of California in Courtroom 9D of the First Street Courthouse, Located at 350 West 1st Street, Los Angeles, California 90012, Defendant/Counter-Claim Plaintiff All American Healthcare Services, Inc. will and hereby do move the Court to grant All American's Motion for Summary Judgment.

This motion is based on this Notice, the accompanying brief, the statement of undisputed facts, the exhibits, the Court's files and records in this matter, any other matter of which the Court may take judicial notice, and any oral argument that may be presented to the Court.

DATED: June 20, 2024

**CALLAGY LAW, P.C.**
Brian A. Williamson


*/s/Brian A. Williamson*
Brian A. Williamson, Esq.
*Attorneys for Defendant/Counter-Claim Plaintiff ALL AMERICAN HEALTHCARE SERVICES, INC.*

2

BRIAN A. WILLIAMSON, ESQ. (CA BAR NO. 336547)
**CALLAGY LAW, P.C.**
2550 Union Hills Dr., Ste 350-341
Phoenix, AZ 85027
Telephone: (201)261-1700
Facsimile: (201)549-8408
E-mail: bwilliamson@callagylaw.com
Attorneys for Defendant/Counter-Claim Plaintiff
All American Healthcare Services, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAMEDA HEALTHCARE & WELLNESS CENTER, LLC, a California limited liability company; et al; | |
| Plaintiff, | Case No. 2:23-CV-00859-GW |
| v. | **ALL AMERICAN HEALTHCARE SERVICES, INC'S MOTION FOR SUMMARY JUDGMENT** |
| ALL AMERICAN HEALTHCARE SERVICES, INC, a New Jersey Corporation; and DOES 1 through 10, inclusive, | |
| Defendants. | |
| ALL AMERICAN HEALTHCARE SERVICES, INC, a New Jersey Corporation | |
| Counter-Claim Plaintiff, | |
| v. | |
| ALAMEDA HEALTHCARE & WELLNESS CENTER, LLC, a California limited liability company; et al. | |
| Counter-Claim Defendants. | |

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................. 5

**LEGAL STANDARD** ............................................................................. 6

**LEGAL ARGUMENT** ..............................................................................................**7**

I.   ALL AMERICAN IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT COUNTERCLAIM BECAUSE PLAINTIFFS HAVE ADMITTED TO BREACHING THE CONTRACT BY FAILING TO PAY MONIES ADMITTEDLY DUE AND OWING. .............................................................................................................................7

   **A.   The existence of a valid contract is undisputed.**..........................................**8**

   **B.   It is undisputed that All American performed by providing nursing staff to Plaintiffs.** ................................................................................................................**8**

   **C.   Plaintiffs breached the contract by failing and refusing to pay amounts due, including undisputed amounts.**...............................................................................**10**

   **D.   Plaintiffs have caused All American damages.** ...........................................**13**

II.   ALL AMERICAN'S BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS ALSO RIPE FOR SUMMARY JUDGMENT. ................................................................................................................................19

III.   ALL AMERICAN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' AFFIRMATIVE CLAIMS. .......................21

   **A.   PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS THEY NOT ONLY BREACHED FIRST, BUT HAVE NO EVIDENTIARY EVIDENCE TO SUPPORT SUCH A CLAIM.** ................................................**21**

   **B.   PLAINTIFFS' CLAIM FOR VIOLATION OF BUS. & PROF. CODE § 17200 MUST FAIL AS A MATTER OF LAW.**................................................**23**

IV.   PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF FAILS BECAUSE PLAINTIFFS BREACHED THE CONTRACT. ...........26

**CONCLUSION** ...................................................................................................**27**

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)............................................5

*Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204, 165 Cal. Rptr. 3d 299, 320 (2013) .......................................................................................................17

*Brown v Grimes*, 192 Cal.App.4th 265, 277 (2011)....................................................20

*CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008) ........................6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)................................................4

*EEOC v. Abercrombie & Fitch Stores, Inc*., 966 F. Supp. 2d 949, 958 (N.D. Cal. 2013) ..............................................................................................................................5

*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [159 Cal. Rptr. 482, 598
P.2d 452]..........................................................................................................................17
*Grange Ins. Ass'n v. Lintott*, 77 F. Supp. 3d 926, 933 (N.D. Cal. 2015) ......................5
*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 311, 120 Cal. Rptr. 3d 741, 746, 246
P.3d 877, 881 (2011) .......................................................................................................21
*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 311, 120 Cal. Rptr. 3d 741, 746, 246
P.3d 877, 881 (2011). ......................................................................................................21
*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 [271 Cal. Rptr. 246]. 18
*Mazonas v. Nationstar Mortgage LLC*, 16-CV-00660-RS, 2016 WL 2344196, at *7
(N.D. Cal. May 4, 2016)...................................................................................................6
*Ollie v. Waypoint Homes, Inc.*, 104 F. Supp. 3d 1012, 1013 (N.D. Cal. 2015) .............4
*See* 2*Die4Kourt v. Hillair Capital Mgmt., Ltd. Liab. Co.*, 692 F. App'x 366, 367 (9th
Cir. 2017)........................................................................................................................20
*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) .........................5

**STATUTES**
California Business and Professions Code § 17200 .....................................................21

## **PRELIMINARY STATEMENT**

Defendant/Counter-Claim Plaintiff All American Healthcare Services, Inc. ("All American") hereby moves the Court for summary judgment as to all claims on the grounds that there is no genuine issue of material fact and All American is entitled to judgment as a matter of law.

It is undisputed, based on Plaintiffs' own testimony, that Plaintiffs are in breach of their contractual obligations and that monies are owed – including undisputed amounts – to All American. Moreover, there is incontrovertible evidence that Plaintiffs failed to dispute All American's invoices within the time limit required by the Parties' written contract and, as a result, all objections' Plaintiffs seek to now raise have been waived as a matter of law. Indeed, Plaintiffs' own witnesses have testified that Plaintiffs have failed to pay amounts which are undisputed, in direct violation of the terms of the contract. As such, it is indisputable that All American is entitled to judgment as a matter

of law.

Moreover, All American is entitled to summary judgment on its claim for breach of the implied covenant of good faith and fair dealing because Plaintiffs have admitted to refusing to pay even undisputed amounts due and owing, violating the fundamental principles of honesty and fairness inherent in every contract. Such actions undermine the integrity of the contractual relationship and constitute a clear breach of the implied duty to act in good faith.

All American is also entitled to summary judgment on Plaintiffs' affirmative claims, which are not only refuted by the proofs in support of All American's claims but are also devoid of evidentiary support. While Plaintiffs claim that All American improperly cancelled nursing shifts, Plaintiffs can point to no evidence that All American cancelled nursing shifts until well after Plaintiffs were in breach of contract. Furthermore, Plaintiffs have no evidence that they suffered any damages as a result of any acts or omissions of All American, resulting in the preclusion of all of their claims as a matter of law.

As such, summary judgment must be granted in favor of All American.

## LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. *Ollie v. Waypoint Homes, Inc.*, 104 F. Supp. 3d 1012, 1013 (N.D. Cal.

2015) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Further, a party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows a genuine issue of material fact exists for trial." *EEOC v. Abercrombie & Fitch Stores, Inc*., 966 F. Supp. 2d 949, 958 (N.D. Cal. 2013) (citations omitted). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.* "Once the moving party has met its burden, the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory." *Grange Ins. Ass'n v. Lintott*, 77 F. Supp. 3d 926, 933 (N.D. Cal. 2015) (citations omitted).

<u>**LEGAL ARGUMENT**</u>

**I.    ALL AMERICAN IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT COUNTERCLAIM BECAUSE PLAINTIFFS HAVE ADMITTED TO BREACHING THE**

**CONTRACT BY FAILING TO PAY MONIES ADMITTEDLY DUE AND OWING.**

All American's First Cause of Action for Breach of Contract is conclusively and indisputably established by the testimony and admissions of Plaintiffs' designated corporate representative, Stephanie Gonzalez.

A breach of contract claim consists of four elements: "'(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.'" *Mazonas v. Nationstar Mortgage LLC*, 16-CV-00660-RS, 2016 WL 2344196, at *7 (N.D. Cal. May 4, 2016) (quoting *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)). There are no genuine disputed issues of material fact in this case regarding any of the elements of breach of contract. Summary judgment is, thus, appropriate.

**A. The existence of a valid contract is undisputed.**

There is no dispute that there is a valid contract between the parties. *See* Statement of Uncontroverted Facts ("SUF") 1. Both Plaintiffs and All American have relied upon the Master Healthcare Staffing Agreement ("the Agreement") in their pleadings. *See* Plaintiffs' Complaint (ECF 5); All American's First Amended Counterclaim (ECF 34, 34-1). Thus, there is a valid contract.

**B. It is undisputed that All American performed by providing nursing staff to Plaintiffs.**

All American indisputably fulfilled its contractual obligations.

As relevant here, under the Agreement, All American was obligated to recruit, screen, interview, and assign its nurse employees ("Assigned Employees") to fulfill nursing shifts at the Plaintiffs' facilities, pay the Assigned Employees, and instruct the Assigned Employees to utilize the time logging mechanisms employed by Plaintiffs' facilities. *See* SUF 7; Exhibit A at Section 1. All American fulfilled these obligations by providing Assigned Employees to Plaintiffs, paying its Assigned Employees, and instructing those Assigned Employees to use the time logging mechanisms utilized by the facilities. *See* SUF 14-16.

Plaintiffs do not dispute that All American performed its obligations under the Agreement. Rather, Plaintiffs contend that All American breached the Agreement by not providing documentation supporting All American's invoices and by cancelling nurses' shifts without adequate notice – contentions which, as discussed below are unsupported by any evidence. *See* Deposition of Stephanie Gonzalez ("Gonzalez Deposition"), 14:1-7 (Plaintiffs' designated representative testifying that "The facilities are claiming that All American breached their contract by not providing proper documentation" and therefore "the facilities were not able to verify all invoices provided by All American."); *see also* Plaintiffs Complaint (ECF 5) at ¶ 49 ("Defendant breached the Agreement by submitting invoices to Plaintiffs for payment, without supporting documentation."); ECF 5 at ¶ 50 (alleging All American "breached the Agreement by cancelling its nurse-employees' shifts without adequate notice…."). However, there is no allegation that All American failed to provide nurses to fill shifts for Plaintiffs.

Thus, it is undisputed that All American performed under the Agreement by providing nursing staff to Plaintiffs in accordance with the terms of the Agreement.

All American also had to ensure that "[i]nvoices [were] supported by the pertinent time sheets for documenting time worked by the Assigned Employees." This too was fulfilled. Indeed, Plaintiffs claimed "person most knowledgeable" could not articulate any specific instances where necessary documentation was not provided. Deposition Transcript of Stephanie Gonzalez generally. Additionally, there was no indication of any missing time sheets relevant to the invoices in question. *Id.* at 232:5-233:18. Why couldn't the person claimed to be most knowledgeable point to a specific issue? Because the reality is that such claim is provably false.

Thus, All American indisputably fulfilled its contractual obligations.

**C. Plaintiffs breached the contract by failing and refusing to pay amounts due, including undisputed amounts.**

Plaintiffs breached the contract by failing to pay All American for the services rendered.

Pursuant to the Agreement, Plaintiffs were under a duty to "Promptly pay all undisputed amounts on invoices …." *See* Exhibit A at Section 2(h); SUF 8. The process for generating invoices and establishing that the amounts due are undisputed is clearly set forth in the terms of the Agreement. The Agreement provides:

> Invoices will be supported by the pertinent time sheets for documenting time worked by the Assigned Employees. CLIENT agrees to execute promptly Assigned Employees'

timesheets pursuant to the schedule set forth herein. CLIENT's signature or other agreed method of approval of the work time submitted for Assigned Employees constitutes acceptance by the CLIENT that the documented hours are correct, and that CLIENT authorizes AACHS to bill CLIENT for those hours. If CLIENT disputes a portion of any invoice, this will not relieve the CLIENT of the obligation to pay timely any undisputed portion. Additionally, AAHCS, every week, will also send CLIENT, via email, a request to confirm the week's shift(s).

*See* Exhibit A at Section 4(a); SUF 10. The Agreement further provides that

Plaintiffs were required to submit all signed timesheets by noon on Monday for the

preceding week, that All American would email confirmation of the week's shifts to

Plaintiffs, that All American would send an "Approval Email" to Plaintiffs, and that

Plaintiffs would have the longer of "24 hours, or one business day" to make any

adjustments to the amounts. *See* Exhibit A at Section 4(b)(i)-(iii); SUF 11.

**<u>Critically</u>**, the Agreement states "If CLIENT fails to APPROVE or

DISAPPROVE the timesheets with 24 hours of delivery of the Approval Email,

CLIENT waives any objections to the timesheets and agrees to be obligated to pay in

full for the hours reflected on the timesheets, regardless of whether hours were

incorrectly documented." *See* Exhibit A at Section 4(b)(iii); SUF 11.

The Agreement further provided that "Payment for invoices shall be due no later

than thirty (30) days from Facility's receipt of the invoice and all supporting

documentation." *See* Exhibit A at 4(d); SUF 12.

1    Plaintiffs cannot dispute the fact that they breached the Agreement by failing to

2 make payments due and owing because Plaintiffs have admitted that they have not paid

3 invoices <u>which they acknowledge are undisputed</u>. Ms. Gonzalez, Plaintiffs' designated

4 representative, testified that Plaintiffs made a conscious decision to stop paying even

5 undisputed invoices.

```
                                                          203
1          Do you have an understanding if there is an

2   invoice that has a problem with it, what Rockport and

3   the plaintiff facility's obligations were to do with

4   the undisputed amounts?

5       A.   They would pay the undisputed amounts.

6       Q.   Do you know if that's what Rockport did, in

7   fact?

8       A.   To a certain extent.

9       Q.   I'm not sure what that means.  Do you know
10  if the plaintiff facilities or Rockport, acting on
11  their behalf, paid invoices like AHS_8779, and if
12  there was a dispute on one of the invoices, whether
13  they would pay the balance?
14      A.   So I know that in the beginning of the
15  relationship between All American and the facility, if
16  there was an undisputed amount, they would pay.
17  However, once the issue started, the facilities put a
18  pause on payment due to the dispute that was
19  happening.
```

*See* Gonzalez Deposition at 203:1-19; SUF 44.  Further, when asked: "You are

aware that as of today, there are monies that are due and owing on undisputed invoices

that are due today because they're undisputed, correct?", Ms. Gonzalez answered, "Yes, I'm aware." *See* Gonzalez Deposition at 204:7-15; SUF 45.

Ms. Gonzalez, testifying on behalf of Plaintiffs, identified **fifty-one (51) undisputed invoices, totaling $513,890.67**, which Plaintiffs admit is due and owing to All American. *See* Deposition of Stephanie Gonzalez, 204:7-15; 282:3-289:9; 290-5-294:8; SUF 46-47.

As noted above, the Agreement expressly imposes on Plaintiffs a duty to "[p]romptly pay all undisputed amounts…." *See* Exhibit A at Section 2(h); SUF 8. Critically, Ms. Gonzalez's testimony established that Plaintiffs failure to pay invoices was wrongful because they refused to pay undisputed amounts. Indeed, Plaintiffs' cessation of payment was not due to any contention regarding the invoices themselves and these amounts are due and owing. Having admitted that they have not paid All American even on invoices which Plaintiffs admit are undisputed, Plaintiffs have conceded that they breached the Agreement. Therefore, Plaintiffs are in breach of contract.

**D. Plaintiffs have caused All American damages.**

Plaintiffs' breach of contract has caused All American substantial damages. Plaintiffs admitted that there is $513,890.67 in undisputed amounts owed to All American. *See* SUF 46-47. However, this is not the full extent of All American's damages. Rather, because Plaintiffs failed to timely dispute any of the invoices at issue

**Commented [BW1]:** Citation

**Commented [BW2]:** Update based on SOF changes.

in this case, All American is entitled to an award of damages for the full outstanding balance on all of its unpaid invoices, plus interest.

      1. <u>Plaintiffs have waived any objections to All American's timesheets and invoices because they failed to raise objections within the contracted for time limit.</u>

Plaintiffs cannot dispute All American's invoices because they failed to raise objections to those invoices within 24 hours, as required by the Agreement. The Agreement provides:

> Invoices will be supported by the pertinent time sheets for documenting time worked by the Assigned Employees. **CLIENT agrees to execute promptly Assigned Employees' timesheets pursuant to the schedule set forth herein. CLIENT's signature or other agreed method of approval of the work time submitted for Assigned Employees constitutes acceptance by the CLIENT that the documented hours are correct, and that CLIENT authorizes AACHS to bill CLIENT for those hours.** If CLIENT disputes a portion of any invoice, this will not relieve the CLIENT of the obligation to pay timely any undisputed portion. Additionally, AAHCS, every week, will also send CLIENT, via email, a request to confirm the week's shift(s).

*See* Exhibit A at Section 4(a) (emphasis added); SUF 10. The "schedule" for executing timesheets provides that the "CLIENT" must submit all signed timesheets "by noon on the Monday following the prior workweek" and that the Assigned Employee and the CLIENT "must sign all timesheets." *See* Exhibit A at Section 4(b)(i); SUF 11. After the signed timesheets are received by All American, All American sends an

"Approval Email" to the CLIENT "to confirm shifts and make necessary adjustments." *See* Exhibit A at Section 4(b)(ii); SUF 11.

Dispositively, the Agreement then provides as follows:

> Client will have 24 hours, or one business day (whichever is longer) from the time of delivery for the approval emails to confirm the prior week's shifts and make any necessary adjustments. **If CLIENT fails to APPROVE or DISAPPROVE the timesheets with 24 hours of delivery of the Approval Email, CLIENT waives any objections to the timesheets and agrees to be obligated to pay in full for the hours reflected on the timesheets, regardless of whether hours were incorrectly documented.**

*See* Exhibit A at Section 4(b)(iii) (emphasis added); SUF 11.

Thus, for Plaintiffs to dispute any of All American's outstanding invoices and to demonstrate a genuine issue of material fact, Plaintiffs must demonstrate that they disapproved of a challenged invoice within 24 hours of receipt of the approval emails.

**There is no evidence that Plaintiffs disputed any of the outstanding invoices at issue in this case within 24 hours of delivery.** *See* SUF 24. In fact, Mr. Ma unequivocally testified that Plaintiffs did not even attempt to review and respond to All American within the 24 hour approval window. Mr. Ma first testified that he was not aware that invoices had to be disputed within 24 hours and that he did not review the All American and Rockport agreement. "Q. Did you ever review the agreement between All American and Rockport? A. I did not. Q. Do you know that there was a requirement that within 24 hours of a request for approval of invoices, the invoices had to be disputed, otherwise those disputes were waived? A. I was not aware of that." *See* Deposition

15

**Commented [BW3]:** Add language and factual support to show why Ma is someone whose word on this is binding. i.e. Rockport was the finance arm of the facilities, Ma is the CFO, etc.

Transcript of Alan Ma at 13:7-13:13 (Exhibit W). Mr. Ma then testified that Plaintiffs set up their own procedures, irrespective of what the contract said. "Q. And was it you who set up this protocol? A. I -- I personally -- I -- there -- there was another -- you know, there's policies and procedures, but there was another CFO here prior to my arrival -- Q. Okay. A. -- and there were certain policies and procedures, and then as I came on board, I -- I added -- I added additional internal control steps to the process." *Id.* at 49:3-12. Mr. Ma then testified that there was no policy or procedure to review the invoices within 24 hours, and that he had never heard of that being done. "Q. So the teams were essentially taxed, pressed, and couldn't move as quickly as they would have wanted to; correct? A. Correct. Q. And to the best of your knowledge, you never made it a policy and protocol that invoices that were submitted had to be disputed within one business day; is that correct? A. Yeah. I did not come up with that. Q. Did you ever hear that before, that invoices had to be disputed within 24 hours? A. I did not. *Id.* at 50:23-51:12.

What's more, Ms. Gonzalez testified that she was not aware of any invoice by All American that was disputed because it did not attach pertinent time sheets. *See* Deposition Transcript of Stephanie Gonzalez at 232:5-233:18 (Exhibit X)

Quite simply, Plaintiffs have admitted that they have not timely disputed any invoices based on a lack of supporting time records.

Plaintiffs made no effort to dispute invoices within the 24-hour period provided by the Agreement. There is no evidence that they timely raised any objections to All American's invoices. As a result, Plaintiffs waived any objections to the timesheets and

invoices and, per the express terms of the Agreement, are obligated to pay the full amounts of the invoices.

> 2. Plaintiffs collectively owe $994,634.68 in outstanding principal plus interest plus attorney's fees and costs to All American.

The amounts owed by Plaintiffs to All American are clearly established by All American's invoices. The total principal amounts owed by Plaintiffs, exclusive of interest and other costs and fees, is as follows:

| Plaintiff | Outstanding Principal |
|---|---|
| Alameda Healthcare & Wellness Center, LLC | $276,327.39 |
| B-East, LLC dba Amaya Springs Healthcare Center | $9,103.88 |
| B-San Diego, LLC dba Brighton Place – San Diego | $56,395.50 |
| Chico Terrace Healthcare & Wellness Centre, LP | $212,694.42 |
| East Terrace Rehabilitation & Wellness Centre, LP | $30,770.66 |
| Highland Park Skilled Nursing & Wellness Centre, LLC | $24,233.00 |
| Point Loma Rehabilitation Center, LLC cba The Pavilion at Ocean Point | $30,866.09 |

| Plaintiff | Outstanding Principal |
|---|---|
| The Rehabilitation Center of Oakland, LLC | $4,457.50 |
| Tulare Nursing & Rehabilitation Hospital, Inc. | $7,738.50 |
| Chico Heights Rehabilitation & Wellness Centre, LP dba Windsor Chico Creek Care and Rehabilitation Center | $136,932.01 |
| River Valley Healthcare & Wellness Centre, LP dba Windsor Redding Care Center | $232,895.73 |

Exclusive of interest, Plaintiffs collectively owe about $994,634.68 in outstanding principal. Additionally, All American is entitled to one and one-half percent (1.5%) interest per month, or eighteen percent (18%) per year, on the outstanding principal, pursuant to the Agreement. *See* Exhibit A at 4(e).

Thus, it is clear that All American has suffered damages which Plaintiffs are obligated to pay. All American respectfully requests that this Court grant summary judgment in its favor, awarding all outstanding principal amounts, pre-judgment interest at the rate of one and one-half percent (1.5%) per month on each outstanding invoice from the date payment was due, as well as attorney's fees and costs.

3. <u>Plaintiffs cannot avoid judgment by attempting to fabricate additional conditions for payment.</u>

Plaintiffs cannot avoid judgment by attempting to fabricate additional conditions for payment. Plaintiffs will undoubtedly attempt to avoid summary judgment by attempting to confuse the Court with a red herring argument. Specifically, Plaintiffs are certain to argue that All American failed to support its invoices with signed CDPH Form 530s, a California Department of Public Health form designed to ensure medical facilities – such as Plaintiffs – comply with state mandated daily nursing hours per patient requirements. But this argument is a red herring because (a) the CDPH Form 530s are not "pertinent time sheets" provided for in the Agreement; (b) Plaintiffs cannot make completion of a form that is within Plaintiffs sole control a condition of payment; and (c) even if CDPH Form 530s were pertinent time sheets, Plaintiffs' approval signatures on the nurses' time sheets constitute affirmative approval of the billed time pursuant to the Agreement.

## II.     ALL AMERICAN'S BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM IS ALSO RIPE FOR SUMMARY JUDGMENT.

The claim of breach of the covenant of good faith and fair dealing must also be granted in summary judgment. The covenant of good faith and fair dealing is an implied term in every contract under California law, requiring parties to act with honesty, fairness, and good faith in their contractual dealings. *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204, 165 Cal. Rptr. 3d 299, 320 (2013). "The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive

the benefits of the agreement." *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [159 Cal. Rptr. 482, 598 P.2d 452]. "In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 [271 Cal. Rptr. 246].

Here, the actions of the Plaintiffs, as elucidated by Stephanie Gonzalez's testimony, flagrantly violate this fundamental principle of contract law. Gonzalez's deposition testimony unequivocally reveals that the Plaintiffs, despite acknowledging the absence of disputes over certain invoices, deliberately withheld payment, as explained above. *See* Stephanie Gonazlez Deposition Transcript at 203:1-19; 204:7 7-15 (Exhibit X). Such conduct represents a clear departure from the duty of good faith and fair dealing inherent in every contract. The Plaintiffs' decision to withhold payment, despite the absence of any legitimate dispute over the invoices, demonstrates a lack of honesty, fairness, and good faith in their contractual performance.

Furthermore, the Plaintiffs' actions not only contravene the spirit of the contractual relationship but also undermine the foundational principles of fairness and equity. By exploiting the very fact that the Parties may have other disputes, the Plaintiffs have attempted to gain an unfair advantage over All American and circumvent their contractual duties, all together. Such opportunistic behavior is antithetical to the covenant of good faith and fair dealing, which requires parties to deal fairly and honestly

with each other, especially in matters concerning contractual performance and obligations.

In light of these egregious violations of the covenant of good faith and fair dealing, summary judgment must be granted. The Plaintiffs' actions constitute a clear breach of their implied duty to act with honesty, fairness, and good faith in their contractual dealings with All American.

### III. ALL AMERICAN IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' AFFIRMATIVE CLAIMS.

In addition to All American's Counterclaims, All American is entitled to summary judgment as to Plaintiffs' affirmative claims.

#### A. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS THEY NOT ONLY BREACHED FIRST, BUT HAVE NO EVIDENTIARY EVIDENCE TO SUPPORT SUCH A CLAIM.

Plaintiffs' claim for breach of contract will fail as a matter of law because there is no evidence to support their claim.

Plaintiffs claim that All American breached the contract by canceling nursing shifts without giving proper notice. However, there is no evidence that All American canceled any shifts except after Plaintiffs repeatedly failed to pay for All American's services *and* All American had given notice that Plaintiffs had failed to pay *and* Plaintiffs still failed to cure their breach. Plaintiffs have not provided any evidence to demonstrate the contrary. Indeed, the shifts identified by Plaintiffs as "cancelled" lack evidence that they were canceled by All American as opposed to individual nurses. Shifts canceled by

All American were done only after Plaintiffs' breach of the Agreement and following multiple notifications about the non-payment. Plaintiffs' failure to pay for services constitutes a prior material breach of the Agreement, excusing any subsequent cancellations by All American. It is well-settled that a party who commits the first material breach of a contract cannot claim a subsequent breach by the other party. *Brown v Grimes*, 192 Cal.App.4th 265, 277 (2011). It is well settled that "[a] party to a contract cannot both refuse to perform its obligations and continue to avail itself of the contract's benefits, even if it believes that the other party has breached." *See* 2D*ie4Kourt v. Hillair Capital Mgmt., Ltd. Liab. Co.,* 692 F. App'x 366, 367 (9th Cir. 2017).

Plaintiffs also try to confuse the record and make claims that they did not receive documents that they indisputably did.

| Disputed as "No Invoice Copy" in Plaintiffs' document production at PLTF_CD_00035405. | |
| --- | --- |
| Description of Disputed Item | Document Location in Defendants' Production |
| Alameda Invoice 1220028632 | AAHS 1062 |
| Windsor Redding Invoice 1220028602 | AAHS 8167 |
| Windsor Chico Creek Invoice 1220026570 | AAHS 7119 |
| Windor Chico Creek Invoice 1220026993 | AAHS 7130 |
| Windor Chico Creek Invoice 1220028283 | AAHS 7218 |
| Windor Chico Creek Invoice 1220028825 | AAHS 7234 |
| Windor Chico Creek Invoice 1230000198 | AAHS 7241 |
| Country Invoice 1220027294 | AAHS 3465 |
| Country Invoice 1220027122 | AAHS 3866 |
| Country Invoice 1220027528 | AAHS 3911 |
| Chico Care Center 1220027469 | AAHS 2477 |
| Chico Care Center 1220028776 | AAHS 2578 |
| Chico Care Center 1230000183 | AAHS 2600 |

Furthermore, Plaintiffs cannot identify any damages resulting from the alleged breach by All American. When asked, Plaintiffs' representative could not provide any

calculation of damages, stating only that damages had not yet been calculated, and no evidence has been presented to support any claim of damages. *See* Deposition of Stephanie Gonzalez generally (Exhibit X). Indeed, at no point in time have Plaintiffs made any disclosure concerning their alleged damages or any methodology used to calculate alleged damages.

As Plaintiffs cannot demonstrate that All American breached the Agreement and have produced no evidence of any damages suffered by Plaintiffs, Plaintiffs' breach of contract claim fails and the Court must award summary judgment to All American.

**B. PLAINTIFFS' CLAIM FOR VIOLATION OF BUS. & PROF. CODE § 17200 MUST FAIL AS A MATTER OF LAW.**

The Plaintiffs' claim for violation of California's Business and Professional Code fails due to several key factors.

To prevail under California Business and Professions Code § 17200, also known as the Unfair Competition Law (UCL), a plaintiff must establish that the defendant engaged in business practices that are unlawful, unfair, or fraudulent. The UCL broadly defines "unfair competition" to encompass these three categories, allowing for a wide range of activities to be actionable. The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the legislature framed the UCL's substantive provisions in broad, sweeping language and provided courts with broad equitable powers to remedy violations. California's False Advertising Law, Bus. & Prof. Code, § 17500

et seq., is equally comprehensive within the narrower field of false and misleading advertising. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 311, 120 Cal. Rptr. 3d 741, 746, 246 P.3d 877, 881 (2011)

A plaintiff proceeding on a claim of misrepresentation as the basis of an action under California's Unfair Competition Law, Bus. & Prof. Code, § 17200 et seq., "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions…[showing] that the misrepresentation was an immediate cause of the injury-producing conduct". *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 311, 120 Cal. Rptr. 3d 741, 746, 246 P.3d 877, 881 (2011).

Plaintiffs' claim primarily rests on allegations that Defendants submitted false invoices and charged inflated rates without supporting documentation, signatures, or verification required under the Agreement.

Plaintiffs allege that Defendants submitted invoices lacking necessary documentation. However, Plaintiffs' "person most knowledgeable," Stephanie Gonzalez, acknowledged that she could not identify a single instance where All American's invoices were not supported by the pertinent time sheets as required by the Agreement. *See* Transcript of Stephanie Gonzalez at 232:5-233:18 (Exhibit X). As a result, Plaintiffs have admitted that they have no evidence to support their claim that All American failed to support its invoices with appropriate documentation.

Without evidence of any specific instances where All American failed to meet the contractual requirement to support its invoices with the pertinent time sheets, as required by Section 4(a) of the Agreement, Plaintiffs cannot establish unlawful conduct under the UCL. *See* Exhibit A at Section 4(a).

Second, Plaintiffs assert unfair and fraudulent conduct based on overbilling, demanding payment for invoices lacking supporting documentation, and imposing unlawful penalties and late fees. However, this again is factually untrue and unsupported. Plaintiffs failed to make timely payments despite contractual obligations, which led to late fees and interest. Indeed, Plaintiffs have already admitted that they did not adhere to the contract's dispute resolution procedures and imposed their own protocols. *See* Transcript of Alan Ma at 49:3-12 (Exhibit W). Plaintiffs failed to timely object and have no documents to support such an allegation. Plaintiffs' witnesses have already established that there were no timely objections. Mr. Ma testified that he was unaware of the requirement to dispute invoices within 24 hours and that he had not reviewed the agreement between All American and Rockport. When asked, "[d]id you ever review the agreement between All American and Rockport?" he responded, "I did not." He was then asked, "[d]o you know that there was a requirement that within 24 hours of a request for approval of invoices, the invoices had to be disputed, otherwise those disputes were waived?" to which he answered, "I was not aware of that." *See* Deposition Transcript of Alan Ma at 13:7-13:13 (Exhibit W).

Mr. Ma further testified that Plaintiffs established their own procedures, without regard to the contract terms. When asked, "[a]nd was it you who set up this protocol?" he replied, "I -- I personally -- I -- there -- there was another -- you know, there's policies and procedures, but there was another CFO here prior to my arrival -- Q. Okay. A. -- and there were certain policies and procedures, and then as I came on board, I -- I added -- I added additional internal control steps to the process." *Id.* at 49:3-12. Additionally, Mr. Ma testified that there was no policy or procedure to review invoices within 24 hours and that he had never heard of such a practice being implemented. *Id.* at 50:23-51:12.

Plaintiffs' failure to follow contractual procedures and demonstrate that Defendants' actions were unfair or deceptive undermines their claim. There is no evidence that Defendants' billing practices were fraudulent or significantly harmful to competition or consumers.

Furthermore, Plaintiffs' claim must also fail because Plaintiffs have no evidence of damages. Plaintiffs have failed to identify any harm allegedly suffered by Plaintiffs as a result of any of All American's actions. Absent damages, Plaintiffs' claim fails as a matter of law.

Thus, All American is entitled to summary judgment on Plaintiffs' claim under California Business and Professions Code § 17200.

### IV.   PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF FAILS BECAUSE PLAINTIFFS BREACHED THE CONTRACT.

Plaintiffs' claim for declaratory relief fails as a matter of law because the evidence clearly establishes that Plaintiffs breached the contract.

Plaintiffs allege that they did not breach the contract and seek a declaration to that effect. However, the evidence and testimony presented by Plaintiffs themselves establish the contrary. As explained above and broken-down element by element, All American has proven that Plaintiffs have breached the Agreement. Indeed, this was established through Plaintiffs own witnesses. For example, Alan Ma's testimony confirms that Plaintiffs did not adhere to the contract's dispute resolution procedures. *See* Deposition Transcript of Alan Ma at 49:3-12 (Exhibit W). Moreover, Stephanie Gonzalez acknowledged that Plaintiffs withheld payments even when invoices were undisputed. *See* Deposition Transcript of Stephanie Gonzalez at 205:8-9, 232:5-233:18 (Exhibit X).

As the evidence of Plaintiffs' breach of contract is clear, the Court cannot declare that Plaintiffs did not breach the contract and so All American is entitled to summary judgment on this claim.

## **CONCLUSION**

For the foregoing reasons, All American's Motion for Summary Judgment must be granted, judgment must be entered in favor of All American as to all claims, and All American should be awarded its reasonable costs and attorneys' fees.

DATED: June 20, 2024

**CALLAGY LAW, P.C.**
Brian A. Williamson


*/s/Brian A. Williamson*
Brian A. Williamson, Esq.
*Attorneys for Defendant/Counter-Claim Plaintiff ALL AMERICAN HEALTHCARE SERVICES, INC.*